**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-48-DLB**

**ISLOMBEK MATKARIMOV**                                                    **PETITIONER**


**v.**                                           <u>**MEMORANDUM ORDER**</u>


**KRISTI NOEM, et al.,**                                                  **RESPONDENTS**

* * * * * * * * * *

## I.      INTRODUCTION

This matter is before the Court on Petitioner Islombek Matkarimov's Second Motion to Enforce Judgment (Doc. # 15). Respondents having filed their Response (Doc. # 17), and Petitioner having filed his Reply (Doc. # 20) this matter is now ripe for review. For the following reasons, the Court will **deny** the Motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Islombek Matkarimov is a native and citizen of Russia. (Doc. # 1 ¶ 1). Petitioner entered the United States on December 2, 2022 using the CBP One application. (*Id*.). He was then inspected and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) to pursue asylum. (*Id*.; *see also* Doc. # 1-4). His parole was set to automatically expire on February 2, 2023. (Doc. # 1-4). He attended an ICE check-in in January of 2023, approximately one month after entering the United States. (Doc. # 1 ¶ 40). At that appointment, ICE scheduled Petitioner for a subsequent check-in on January 14, 2026. (*Id*.). Petitioner filed his application for asylum on January 27, 2023. (*Id*. ¶ 1). Just days later, Petitioner's parole expired on February 2, 2023. After his parole expired,

1

Petitioner continued to live in Chicago with his wife and children.  (*Id*. ¶ 2).  He obtained his Employment Authorization Document based on his pending asylum application which allowed him to start his own business.  (*Id*. ¶ 42; *see also id*. ¶ 2).  On January 14, 2026, Petitioner was detained while attending his scheduled ICE check-in.  (*Id*. ¶ 3).

On February 6, 2026, Matkarimov filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).  On March 12, 2026 this Court granted the Petition and ordered Respondents to immediately release Petitioner, or in the alternative, provide him with a bond hearing with seven (7) days.  (Doc. # 10 at 21).  On March 20, 2026, Petitioner filed his first motion to enforce, arguing that Immigration Judge ("IJ") Kelly Johnson "adjourned the bond hearing and declined to issue a decision" and had yet to issue an opinion at the date of the filing.  (Doc. # 11).  The Court issued a Show Cause Order directing Respondents to file a status report.  (Doc. # 12).  On March 23, 2026, Respondents submitted a status report indicating that the Immigration Court had issued its decision that day, where it denied bond on the grounds that Petitioner did not present adequate evidence that would "ensure [his] appearance at future immigration hearings and, if necessary, surrender for removal from this country."  (Doc. # 13-1 at 1-3).  Thus, this Court denied Petitioner's first motion to enforce on March 24, 2026.  (Doc. # 14).

On April 17, 2026, Petitioner filed his Second Motion to Enforce Judgment (Doc. # 15).  The Court ordered Respondents to file a response (Doc. # 16), which Respondents did so on April 30, 2026 (Doc. # 17).  Petition filed his Reply on May 12, 2026 (Doc. # 20), and this matter is now ripe for the Court's review.

2

III.    ANALYSIS

In his Second Motion to Enforce, Matkarimov argues that "Respondents have []
deprived him of a constitutionally compliant bond process before a neutral magistrate."
(Doc. # 15 at 1).  Specifically, Petitioner argues that the "IJ deprived [him] of due process
. . . by failing to consider the totality of the record before him."  (Doc. # 15 at 10).
"Additionally, Petitioner argues that he was not granted a constitutionally compliant bond
hearing because his hearing was not before a neutral magistrate.  (*Id*. at 13).  In
Response, Respondents argue that Petitioner failed to exhaust his administrative
remedies and that the Court lacks jurisdiction pursuant to 8 U.S.C. § 1226(e) to review
Petitioner's bond hearing.  (Doc. # 17 at 3).

A.      **Constitutionally compliant bond hearing**

Petitioner argues that his bond hearing was not constitutionally compliant for two
reasons: (1) the bond decision itself was an abuse of discretion; and (2) the hearing was
not before a neutral magistrate.  (Doc. # 20 at 6-8).  The Court will address each argument
in turn.

### 1.  *The Court lacks jurisdiction to consider the IJ's bond denial*

Petitioner first argues that the IJ's decision to deny bond was an abuse of
discretion.  At all levels, jurisdiction poses a threshold question.  *See Florida v. Thomas*,
532 U.S. 774, 777 (2001) ("we must first consider whether we have jurisdiction to decide
this case").  "'Federal courts,' it bears repeating, 'are courts of limited jurisdiction.'"  *In re:
2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (quoting *Kokkonen v. Guardian
Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Thus, "[w]ithin constitutional bounds,
Congress decides what cases the federal courts have jurisdiction to consider."  *Bowles v.*

3

*Russell*, 551 U.S. 205, 212 (2007).  At the outset, the Court must determine whether it has jurisdiction to consider Matkarimov's claims.

Respondents' jurisdictional argument centers on 8 U.S.C. § 1226(e).   (Doc. # 17 at 2).  That statute provides that

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).   Accordingly, "district courts do not have jurisdiction to review discretionary decisions made by an IJ regarding bond." *Fuentes v. Lyons*, No. 5:25-cv-153, 2025 WL 3022478, at *3 (S.D. Tx. Oct. 29, 2025) (citing *Nielsen v. Preap*, 586 U.S. 392, 401 (2019)).  Still, the Supreme Court has emphasized that "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases.  It does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen*, 586 U.S. at 401 (quoting *Jennings v. Rodriguez*, 583 U.S. 295-96 (2018)).  So, where a petitioner challenges a particular discretionary "action" taken by an IJ—as opposed to the statutory framework as a whole—§ 1226(e) precludes the federal courts' review.  *Jennings*, 583 U.S. at 296; *see also Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d. Cir. 2018) ("Because [the petitioner] does not challenge a particular action or decision, but rather 'the statutory framework that permits his detention without bail,' § 1226(e) does not deprive the District Court or this Court of jurisdiction[.]" (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003) (cleaned up)).  Thus, the Court may only consider Petitioner's Motion insofar as it challenges the extent of the Government's detention authority under the INA's framework. *See Nielsen*, 586 U.S. at 401.

In *Marroquin v. Noem*, this Court concluded that when a petitioner "challenges a discretionary application of § 1226(a) and fails to raise a cognizable challenge to the underlying statutory framework or the extent of the Government's detention authority, § 1226(e) precludes this Court's review." No. 26-45-DLB, 2026 WL 575222, at *5 (E.D. Ky. Mar. 2, 2026). In *Marroquin*, the petitioner alleged that the IJ "failed to consider specific factors" and "failed to properly weigh the evidence." *Id*. at *4 (internal quotations omitted). There, the Court noted that the petitioner took issue with the IJ's purportedly excessive reliance on specific factors, such as petitioner's criminal record, in determining that she posed a danger or flight risk. *Id*. The Court concluded that the petitioner's claims—specifically the objection to how the IJ weighed the evidence—were a challenge to a discretionary decision, something this Court lacked the jurisdiction to review. *Id*. (the petitioner "does not claim that her bond hearing lacked necessary procedural safeguards or that the IJ did not have statutory authority to deny bond. Instead she merely argues that the IJ came to the wrong conclusion after reviewing the evidence.").

Matkarimov argues that "unlike the bond decision in *Marroquin*" his Motion should be granted because "[the IJ] overlooked [the *Matter of Guerra*[1]] factors entirely." (Doc. # 20 at 9). The Court disagrees for two reasons.

First, the Court is unconvinced that the IJ wholly overlooked the *Matter of Guerra* factors. Petitioner states that he proffered a voluminous amount of evidence addressing key *Matter of Guerra* factors. (Doc. # 15 at 4). This evidence included:

> (i) a fixed address; (ii) his lawful permanent resident sponsor; (iii) the length of residence in the United States; (iv) his family ties in the United States; (v) Petitioner's employment history and current employment at his own business, with tax returns and pay stubs; (vi) Petitioner's history of complete compliance with ICE requirements from entry to date; (vii) lack

---

[1]   *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).

of any criminal history; (viii) proof of timely filed pending application for asylum; and (viii) [sic] additional equities including letters of support from his employer, friends, co-worker, clients, and community members, and family photos.

(*Id*.).   Petitioner asserts that despite this proffered evidence, the IJ "wholly disregard[ed] the baseline factors prescribed in *Matter of Guerra.*"  (Doc. # 20 at 9).  The record does not support this assertion.

In the IJ's order, he explicitly lists all the *Matter of Guerra* factors he may consider. (Doc. # 13-1 at 2).  These factors include:

(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (2) the alien's family ties in the United States, and whether they may entitled the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

(*Id*. (citing *Matter of Guerra*)).  In his analysis, the IJ explicitly addressed at least five of these nine factors.  (*See id*.) ("Respondent has a fixed address in the United States. Respondent has a United States citizen child who is 2 years old. Respondent owns a garage door repair business. Respondent has no criminal history. Respondent was issued a parole . . . on December 4, 2022.).  The IJ's order states that he had "fully reviewed and considered the entire documentary record" which included a "total of 363 pages" of evidence.  (*Id*.).  Therefore, based on the record before it, the Court cannot conclude that the IJ "wholly disregard[ed]" the *Matter of Guerra* factors as Petitioner asserts.  (Doc. # 20 at 9).

6

Moreover, Petitioner's own Motion belies his claim that the IJ disregarded all the *Matter of Guerra* factors.   There, Petitioner argues that "despite the overwhelming evidence addressing numerous factors under *Matter of Guerra*, IJ Johnson ultimately rest[ed] his decision on two factors."   (Doc. # 15 at 11-12).   This allegation contradicts Petitioner's claim that the IJ's decision wholly disregarded the *Matter of Guerra* factors.

This leads the Court to the second reason why it disagrees with Petitioner that this case is not reflective of the *Marroquin* case.  While Petitioner certainly couches his Motion in the language of a constitutional critique, his argument ultimately takes issue with the IJ's purportedly excessive reliance on two factors in reaching his determination that Petitioner poses a flight risk.  This Court has already concluded that such a claim "raises quintessentially factual arguments about the IJ's decision."[2] *Marroquin*, 2026 WL 575222, at *4.  And factual challenges to an act of administrative discretion fall outside the bounds of the Court's jurisdiction.  *See Nielsen*, 586 U.S. at 401 (noting that § 1226(e) bars review of discretionary applications of § 1226); *Hernandez-Gabriel v. Tate*, No. 25-cv-5687-H, 2026 WL 161192, at *4 (S.D. Tx. Jan. 20, 2026) (holding that a district court lacked jurisdiction to consider a petitioner's challenge to the correctness of an IJ's determination that the petitioner posed a flight risk); *Perez Sierra v. Bondi*, No. 25-cv-18829, 2026 WL 497070, at *3 (D.N.J. Feb. 23, 2026) ("This Court lacks jurisdiction to review any discretionary determinations underlying an immigration judge's bond decision, but it can review whether the bond hearing was fundamentally unfair in violation of this Court's order."); *cf. Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *2 (W.D. Mich.

---

[2]      Petitioner also argues that the IJ "selectively cited from *Matter of R-A-V-P*, 27 I. & N. Dec. 803, 806 (BIA 2020), to support his position that Petitioner's sponsor is inadequate to ensure Petitioner's appearance at future hearings."   (Doc. # 15 at 130.   This claim similarly raises quintessentially factual arguments about an IJ's decision.

Jan. 21, 2026) (holding that § 1226(e) did not bar consideration of a petitioner's challenge that the discretionary process of § 1226(a) itself is unconstitutional).

Accordingly, Matkarimov's Motion does not challenge the INA's statutory framework or the extent of the Government's detention authority.  *See Nielsen*, 586 U.S. at 401.  He does not claim that his bond hearing lacked necessary procedural safeguards or that the IJ did not have statutory authority to deny bond.  Instead, he merely argues that the IJ came to the wrong conclusion after reviewing the evidence.  (Doc. # 15 at 10-13).  The Supreme Court has repeatedly recognized that § 1226(e) bars judicial review of such decisions. *See Nielsen*, 586 U.S. at 401; *Jennings*, 583 U.S. at 295; *Demore*, 538 U.S. at 516; *see also Espinosa v. ICE Field Office Director*, No. 2:26-cv-34-JHC, 2026 WL 369799, at *1 (W.D. Wash. Feb. 10, 2026) (finding a lack of jurisdiction where the petitioner provided "only factual arguments as to why he should be released on bond"); *Bazurto v. Olson*, No. 1:26-cv-122-SEB-CSW, 2026 WL 285993, at *5 (S.D. Ind. Feb. 3, 2026) ("Section 1226(e) might preclude this Court's intervention if [petitioner] requested bond, an immigration judge considered his request on the merits and denied it, and he petitioned this Court for a different result.").

Because Petitioner challenges a discretionary application of § 1226(a) and fails to raise a cognizable challenge to the underlying statutory framework or the extent of the Government's detention authority, § 1226(e) precludes this Court's review.[3]

### 2. IJ Johnson was a neutral decisionmaker

Matkarimov next argues that an enforcement order is appropriate because IJ Johnson was not a neutral decisionmaker.  (Doc. # 15 at 13).  His claim stems from two

---

[3]   Because this Court lacks jurisdiction to consider Petitioner's claim, it need not discuss Respondents' argument that Petitioner failed to exhaust his administrative remedies.

sources. First, he points to IJ Johnson's 97.26% bond denial rate as "the highest in the country" among IJs. (Doc. # 15-3 ¶ 10). This track record, he argues, demonstrates that he is not a neutral adjudicator in bond proceedings. (Doc. # 15 at 15). Next, he argues that the IJs face pressure to deny bond from senior executive branch officials. (*Id*. at 14). He argues that the "EOIR has fired dozens of duly appointed immigration judges, and has steadily been replacing them with 'deportation judges' instead." (*Id*.). "Those who are left" he argues, "understands the message that has been clearly communicated to them by EOIR leadership." (*Id*. at 15). He argues that IJ Johnson is part of that group and has adopted the "detain-and-deport" mindset, "dropp[ing] all pretext and ceas[ing] to grant any bond requests, full stop." (*Id*.).

Based on the record, Petitioner has failed to establish that IJ Johnson was not a neutral decisionmaker. The mere fact that IJ Johnson has a high bond-denial rate cannot establish that he lacks neutrality. Even accepting that he denies bond at a higher rate than most IJs, the Court is unable to conclude that these denials resulted from a bias against petitioners, rather than the facts at play in each case. And IJ Johnson evidently considered these facts in reaching his conclusion. (*See* Doc. # 13-1 at 2). Finally, the Court disagrees that administrative pressures within the Department of Justice have vitiated IJs' ability to adjudicate bond determination hearings in a neutral manner.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1) Petitioner's Second Motion to Enforce Judgment (Doc. # 15) is **DENIED**; and

(2) This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 28th day of May, 2026.



Signed By:

*David L. Bunning*

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-48 MOO re motion to enforce.docx

10